SUTTON, Circuit Judge,
concurring in part and dissenting in part.
I join all sections of the majority’s opinion save one: its decision to uphold the district court’s award of $684,506 in attorney’s fees — all but $1,000 of the fees requested by Waldo’s attorney without any additional reduction for time or rate, including for all work incurred to lose the first jury trial, all work incurred to lose six of the seven claims (four of them state law claims) and for all work incurred to win $300, 000 in the second jury trial. One can be forgiven for thinking that Waldo’s two attorneys, not Waldo, were the true winners. This is good work if you can get it.
Title VII grants courts “discretion” to award “prevailing” parties “a reasonable attorney’s fee.” 42 U.S.C. § 2000e-5(k). “Abuse of discretion” is a phrase of many meanings, and many of them — in isolation — give the district court’s decision the air of plausibility. A district court has a front-row seat at the trial (or, I should say, trials), and accordingly an appellate court distant in time and place should not lightly second guess its assessments of a *828 reasonable fee. Unduly rigorous appellate review of fee awards creates the risk of satellite litigation that leads to more satellite litigation over matters that have nothing to do with the underlying cause of action. Trial court discretion includes in appropriate cases the right to award fees for work done on interrelated causes of action, even when the claimant loses some (even perhaps six of seven) of the interrelated claims and even when four of the seven claims arise under state law. And in some cases it may even be appropriate to grant fees for losing a trial in all respects if the claimant manages to win the same claim in a second trial.
But the acceptance of these points in the aggregate here gives trial court discretion a bad name. I know of no case in which an appellate court upheld all fees for the first Qosing) trial when the only reason for the second trial was the trial court’s granting of a new trial under Civil Rule 59(a)(1)(A), which is to say that the verdict was merely against the weight of the evidence, which is to say that the evidence would have permitted a defense verdict to stand. See White v. Pence, 961 F.2d 776, 780 (8th Cir.1992). There was nothing unfair about the first trial. Defense counsel did nothing wrong. The trial court did nothing wrong. And the jury did nothing wrong, as the evidence would have permitted a defense verdict to stand. All that happened was that the trial judge disagreed with the jury. If anyone did anything wrong, it was plaintiffs counsel in failing to convince the jury to rule his way in the initial trial. No reduction, any reduction, for all of the work on the first trial? That is a heavy lift. Where, moreover, would this end? Would a second lost jury verdict and a second successful Civil Rule 59 motion for a second do-over permit fees as well? Some reduction was in order.
The majority’s citations hold nothing to the contrary. The lead case, Shott v. Rush-Presbyterian-St. Luke’s Medical Center, 338 F.3d 736, 741-12 (7th Cir.2003), rejected the claim for fees. While the other cases upheld fee awards, they did so in distant and distinct settings. See Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1177 (10th Cir.2010) (upholding fee award for three “interrelated” Title VII claims — compensatory damages for retaliation, compensatory damages for discrimination and punitive damages for retaliation — when plaintiff won part of the first trial and part of the second trial); Abner v. Kansas City S. Ry. Co., 541 F.3d 372, 384 (5th Cir.2008) (awarding fees for first trial in which “[t]he jury simply could not reach a verdict”); O’Rourke v. City of Providence, 235 F.3d 713, 737 (1st Cir.2001) (awarding fees for first trial where plaintiff won at trial, only to have judgment in that trial erroneously vacated by the district court and reinstated by the court of appeals); Gierlinger v. Gleason, 160 F.3d 858, 877-78 (2d Cir.1998) (awarding fees incurred during a prior trial that ended in a mistrial, where the mistrial was primarily due to the court’s error — not the plaintiffs). None of these cases involve what we have here — winning all fees by losing all claims in an error-free jury trial on the merits.
Two of the majority’s citations offer more of the same and indeed cut against its conclusion and reasoning. In Jordan v. City of Cleveland, unlike in this case, the plaintiff “prevailed on a substantial number of claims that he pursued.” 464 F.3d 584, 604 (6th Cir.2006). More significantly, the presentation of the unsuccessful claims (discrimination and harassment) was necessary for a complete presentation of the successful one (retaliation for complaining about the same discrimination and harassment). Here we have the opposite *829 situation: It was the harassment claim that succeeded, making it independent of, not dependent on, the retaliation claim. Nor, as the majority suggests, does City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), establish that the amount of damages awarded in a case has no bearing on the proper size of a fee award. Maj. Op. at 823-24 n. 4. It rejects only the idea that § 1988 fees “should necessarily be proportionate to the amount of damages,” id. at 574, 106 S.Ct. 2686 (emphasis added), obviously true in view of the possibility of claims for injunctive relief or nominal damages. But City of Riverside acknowledges and supports the equally obvious proposition pertinent to and ignored in this case — that in the normal course the amount of damages is “certainly relevant” to the size of a proper fee award and is “one of many factors that a court should consider.” Id. at 574, 106 S.Ct. 2686. Just so here — and nowhere accounted for in the district court’s decision. Nor does it seem likely that the same Congress that capped compensatory damages at $300,000 and prohibited punitive damages for this merits claim would have been cheerfully indifferent to runaway, if not punitive, fee awards that bear no relation to this damages award.
In the aggregate, the district court lost sight of the reality that the “reasonable[ness]” of a fee award turns in part on the level of a plaintiffs success — the extent to which he “prevail[edj.” Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). If “a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.” Id. at 436, 103 S.Ct. 1933. That is true even in cases “where the plaintiffs claims were interrelated, nonfrivolous, and raised in good faith.” Id. And that makes sense in view of the Court’s directive to award “only that amount of fees that is reasonable in relation to the results obtained.” Id. at 440, 103 S.Ct. 1933; see also Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 552 (6th Cir.2008) (explaining that courts should consider “whether the plaintiff achieved a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees”).
Hensley itself offers a spot-on comparison. The Court indicated that a fee award nearly identical to this one — an award for the time spent on six claims when the plaintiff won just one — “clearly would have been excessive.” 461 U.S. at 436, 103 S.Ct. 1933. Yes, indeed. Nor was today’s case one in which it was difficult to make a rough cut between the fees for the successful federal claim and the fees for the unsuccessful federal and state law claims. When it is not “difficult to divide the hours expended on a claim-by-claim basis,” id. at 435, 103 S.Ct. 1933, a district court should do so. The district court judge herself showed this was just such a case by ordering a new trial on Waldo’s harassment claim but not her retaliation claim. The two claims are distinguishable in the abstract, and the district court showed they were distinguishable in the here and now. Even Waldo’s counsel at trial argued for the exclusion of certain evidence based on the differences between the legal claims, and her counsel must have understood the distinction between the federal and state law claims when she withdrew all of the state claims, one before the first trial and the remaining three before the jury deliberations in the first trial.
I am prepared to hold my nose in upholding a lot of fee awards, whether they seem too small or too large at the time. But a blanket fee award of $684,506 for losing six of seven claims, including for all *830 of the work in losing the first jury trial, is not one of them.